Darryl S. MILLER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

Nos. 477S267, 575S119.

Supreme Court of Indiana.

July 24, 1979.

Rehearing Denied Sept. 19, 1979.

James V. Tsoutsouris and John F. Hoehner, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted and sentenced to life imprisonment upon a plea of guilty to a charge of first degree murder. His first appeal, No. 575 S 119, with Justice Hunter dissenting, resulted in a remand to the trial court for a determination of the defendant's competency at the time the guilty plea was accepted. (See 264 Ind. 548, 348 N.E.2d 14). Pursuant to such remand, the trial court did conduct such a hearing, at which the only evidence presented was the testimony of the two court appointed physicians. One of such physicians testified that in his opinion the defendant was incompetent at the time the guilty plea was entered. The other first testified that in his opinion the defendant was competent at such time. However, when cross examined and confronted with hypothetical questions disclosing certain of the circumstances under which the defendant had made the guilty plea, circumstances previously unknown to the witness, he acknowledged a serious doubt as to the defendant's competency. The trial judge, nevertheless, determined that the defendant was competent at the time the plea was entered and reinstated the sentence, in accordance with our remand order.

## ISSUE

The single issue presented upon this appeal is whether or not there was sufficient evidence to support a trial court's determination that the defendant was competent at the time he entered the guilty plea.

There is no question but that once a defendant properly raises the issue of his competency to stand trial, due process requires a hearing upon that issue. Neither is there any question but that such hearing must be adequate to meet and preserve the defendant's right to due process and that there must be a record of substantial and competent evidence sufficient to sustain the trial judge's determination of competence. It does not follow, however, that this record discloses that the trial judge ignored the evidence and substituted his "naked judgment," as is contended by the defendant.

In prior cases dealing with the question of the sufficiency of the evidence presented at a competency hearing, we have held that the trial court's "determination involves questions of fact, and an appropriate finding by the trial court is reversible on appeal only if clearly erroneous as unsupported by the facts and circumstances before the court together with any reasonable inferences to be drawn therefrom. * * * The trial court is not bound by the recommendations of the psychiatric witnesses; otherwise there would be no need for a hearing." *Howard v. State,* (1976) 265 Ind. 503, 355 N.E.2d 833. It is upon this basis that the evidence herein challenged must be assessed.

The opinion testimony adduced at the competency hearing was conflicting. The opinion of Dr. Hogle, arrived at from two examinations and interviews with the defendant, was that the defendant understood the nature of the charges against him and the applicable sentence, if convicted, and that he had the ability to assist his attorney. It was his further opinion, however, that on the critical date, the date of the guilty plea, he was under severe emotional stress, stemming from having viewed a photograph of his infant son, and that by reason of such stress, he did not fully appreciate the "unwiseness" of his plea. He also testified that his conclusion was also premised upon the defendant's act of pleading guilty to such a serious offense, without the benefit of legal counsel. The witness' testimony, otherwise, revealed that other relevant factors considered indicated competency.

Dr. Makovsky testified that he examined the defendant on two occasions and concluded therefrom that he was competent on the critical date. He supported his conclusion with testimony that he saw no evidence of organic brain damage, of hallucinations or of delusions. That defendant was cooperative and was able to relate historical facts concerning himself, his family and the criminal incident. That defendant was nervous but normally responsive, was oriented as to time and place and understood his situation. This witness testified that from the aforementioned, he was of the opinion that the defendant was emotionally upset because of his jail environment and his circumstances but that he understood the nature of the charges against him, the applicable sentence if convicted and that he had the ability to assist his attorney in his defense but elected not to avail himself of legal counsel.

It is the defendant's position that the related testimony of Dr. Makovsky was negated by the following related testimony adduced on cross examination and that Dr. Makovsky's testimony, in toto, supported only a finding of incompetence.

"Q. You understand Doctor the critical period we're concerned with relates back to over two years ago at a time when you were not present to see the Defendant, that is on the 13th day of September, 1974?

"A. Right.

"Q. The critical question revolves around whether on that date he was competent to enter a plea by himself to the charge of First Degree Murder, you understand that's the critical issue here?

"A. I understand that.

"Q. Let me ask you this Doctor, when were the murder charges filed against the Defendant if you know?

"A. Well I'd have to look at the records. The records here, August 21st, 1974.

"Q. Doctor, if I were to indicate to you that in August of 1974 there were other charges lodged against the Defendant, not the pending charge, not the murder charge, if I were to tell you that the record shows that at two o'clock in the morning on the 12th of September a purported confession was taken from the Defendant in the Porter County Jail and on the 13th day of September, the very next day, he was brought to court for arraignment, pleaded guilty and was found guilty to First Degree Murder and was shipped off, that was it. Almost simultaneous. Would that make a difference to you as to your opinion whether or not he had the right and the ability to understand the need for counsel at that time?

"A. It would raise some question, yes.

"Q. If I were to further tell you Doctor that at the time that he was in this court to enter that plea that he was intermittently emotional, sobbing, speaking very low, would that alter your opinion Doctor?

"A. It would make me wonder whether there was a possibility that he was emotionally upset to the point he would be unable to properly control himself.

"Q. Well in your report Doctor you indicated that you asked him the question that if he had any question that he was really guilty of the crime of First Degree Murder and he said, yes, he did have a question.

"A. That's right.

"Q. Couldn't quite remember the actual shooting the afore says but his sister-in-law could have done it or whatever.

"A. Correct.

"Q. Now, if you take that Doctor don't you feel that if he had a question as to his guilt and he gives a confession allegedly and then indicted and convicted the very next day of First Degree Murder and still harbor some question as to his guilt or innocence, don't you think that at least the plea was ill-advised?

"A. Probably was ill-advised, yes.

"Q. And don't you think in retrospect if an individual indicates to a physician as he did to you that he is not sure whether or not he even committed the crime. That looking back at him having pleaded guilty all by himself in that emotional state to the crime of First Degree Murder does raise some serious question as to his competency at that time, his mental state of mind.

"A. Yes it does.

"Q. Sure it does.
Given these facts as I have at this point Doctor, would you in fact want to reconsider the opinion that you've rendered to this court through your testimony and through the letter submitted previously?

"A. Well I'd say that there would be a question of competency here."

We are of the opinion that the finding of competency is supported by the evidence. The case stands before us as others challenging the sufficiency of the evidence, i. e. we will affirm, if there is any substantial competent evidence from which a reasonable trier of fact could have concluded that the defendant was competent. *Rosell v. State*, (1972) 265 Ind. 173, 352 N.E.2d 750; *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

As previously stated, the trial judge was not bound by the conclusions of the expert witnesses but was entitled to draw a different conclusion from the evidence, including the recitations of the evidence upon which their opinions were based, provided such evidence reasonably permitted a contrary conclusion.

When all the expert testimony is considered, it is apparent that Dr. Hogle's conclusion of incompetence and Dr. Makovsky's reservations or doubts expressed on cross examination were premised, in the main, upon the defendant's act, with knowledge of the consequences, of pleading guilty to a charge of first degree murder without first having availed himself of legal counsel. The issue is competence versus incompetence, not good judgment versus bad judgment. To make an assessment of competence to enter a plea upon the basis of whether or not the plea entered was wise or unwise is inapposite to the mission. Competency is merely the ability to make a rational decision. An irrational act indicates incompetence to act, but a decision is not irrational merely because it is later regretted or determined to be erroneous. If one is competent to act at all, he is competent to err.

It must also be observed that although Dr. Makovsky vacillated somewhat, upon cross examination, acknowledging that the circumstances related would raise a serious question of competency, he did not retract his opinion that the defendant was competent. In the final analysis, it was for the trial judge to determine whether the existence of various facts related in the hypothetical questions would preponderate over the other evidence, so as to preclude a determination of competency.

Defendant has also urged other considerations as weighing heavily in evidencing that the finding of competency was contrary to law, as unsupported by the evidence, but we cannot agree. That the same trial judge had, one week prior to accepting the guilty plea, ordered a competency hearing in a companion case pending against the defendant, evidences error in not having acted similarly in this case, error for which the cause was remanded for the competency determination which is the subject of this appeal. Such error, however, does not evidence bias or abuse in making the determination now before us. The earlier order by the trial judge for a competency hearing was made pursuant to a legal mandate in view of a suggestion of incompetence. It is no indication that the judge was, at that time, of the opinion that the defendant was, in fact, incompetent.

Additionally, we do not believe it significant that the defendant was severely disturbed emotionally at the time the plea was entered, as related in the hypothetical questions posed on cross examination to Dr. Makovsky. The trial judge was present when the plea was taken and viewed the defendant's demeanor. He was not bound by Dr. Makovsky's opinion that such demeanor compelled doubts or reservations as to the prior expressed opinion of competence.

We find that the evidence presented sustains the finding of competence. The judgment of the trial court is, therefore, affirmed.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., not participating.