James BOND a/k/a Dan Morgan, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 577S309.

Supreme Court of Indiana.

April 25, 1980.

Rehearing Denied July 2, 1980.

Thomas O. Mulligan, Smith & Mulligan, Knox, for appellant.

Theodore L. Sendak, Atty. Gen., Robert J. Black, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of crimes committed on May 10, 1976. He was sentenced accordingly upon the following charges: life imprisonment for kidnapping, Ind.Code § 35–1–55–1 (Burns 1975); life imprisonment for first degree murder, Ind.Code § 35–13–4–1 (Burns 1975); not less than one (1) year nor more than five (5) years for aggravated assault and battery, Ind.Code § 35–13–3–1 (Burns 1975); and death for killing a human being while perpetrating or attempting to perpetrate a kidnapping, Ind.Code § 35–13–4–1 (Burns 1975). This direct appeal presents the following issues:

(1) Whether the trial court erred in imposing the death penalty upon the defendant's conviction for killing a human being while perpetrating or attempting to perpetrate a kidnapping.

(2) Whether the trial court erred in allowing the jury to be selected from property tax rolls and in allowing the State to peremptorily challenge certain jurors who voiced general objections to capital punishment.

(3) Whether the trial court erred in admitting State's Exhibits Nos. 4, 5, 13, 14, 15, 16, and 17, photographs of the decedent taken at the scene of the crime and at the autopsy.

(4) Whether the trial court correctly allowed into evidence testimony of possible sexual molestation of the victim.

(5) Whether the trial court erred in admitting testimony concerning the defendant's past criminal conduct and history of violence.

(6) Whether the trial court committed reversible error in communicating with the foreman of the jury in the absence of the defendant.

(7) Whether the trial court erred in sentencing the defendant upon both the conviction for murder in the first degree and the conviction for killing while perpetrating or attempting to perpetrate a kidnapping.

(8) Whether the evidence was sufficient to sustain the defendant's convictions.

\* \* \*

ISSUE I

On November 12, 1976, the State filed a motion for a bifurcated trial for purposes of imposing a death penalty under Ind.Code § 35–13–4–1(b), which motion was granted. The defendant was found guilty of killing a human being while perpetrating or attempting to perpetrate a kidnapping, and in the second stage of the bifurcated proceedings, he was sentenced to death.

On appeal, the defendant argues that the trial court erred in imposing the death penalty since Ind.Code § 35–13–4–1(b) was declared to be unconstitutional by this Court. *Murphy v. State,* (1977) 267 Ind. 184, 369 N.E.2d 411; *French v. State,* (1977) 266 Ind. 276, 362 N.E.2d 834. The State concedes that the statute has been ruled unconstitutional, but argues that as long as certain procedures are followed which guarantee the defendant's due process rights, the death penalty may, nevertheless, be imposed. The State further argues that the procedures employed by the trial court, in this case, such as the bifurcation of the trial and the balancing of both the aggravating and mitigating factors, met the due process requirements set forth by the United States Supreme Court in *Gregg v. Georgia,* (1976) 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859;

*Proffitt v. Florida,* (1976) 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; and *Jurek v. Texas,* (1976) 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929.

■ The fixing of penalties for crimes is solely up to the Legislature, as the elected representative body, not the trial courts. *Lowe v. State,* (1973) 260 Ind. 610, 298 N.E.2d 421; *Landaw v. State,* (1972) 258 Ind. 67, 279 N.E.2d 230. The judiciary cannot usurp a legislative function by creating standards for imposing the death penalty. As was stated in *Gregg v. Georgia, supra,* at 195, 96 S.Ct. at 2935:

> " * * * the concerns expressed in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance."

■ The death penalty may be imposed only where procedures are followed which guarantee due process. In the instant case, the statute under which the defendant was condemned to death contained no such procedural safeguards. The provision for death, therefore, was invalid and could not be rendered valid by judicially created innovation.

## ISSUE II

■ The defendant next assigns as error the manner in which the jury was selected. He contends that the court erred in selecting potential jurors from the property tax roles, since all individuals who do not own property in Porter County were thus excluded. In *Taylor v. State,* (1973) 260 Ind. 264, 295 N.E.2d 600, we held at p. 271, 295 N.E.2d at p. 605 that:

> "The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the people of the county, cannot be said to violate the rights of the accused, in the absence of a showing that such use is made in a deliberate attempt to exclude certain groups from jury selection."

The defendant has made no attempt to show that any particular groups were deliberately excluded from jury selection. We therefore, find no error in the method in which the jurors were initially called to serve.

The defendant also challenges the manner in which the State chose to peremptorily strike certain jurors. Several jurors were questioned on voir dire as to their views on capital punishment. Each indicated that he felt he could not impose a penalty of death upon a finding that the defendant was guilty. The State moved to excuse the jurors peremptorily, which was done.

■ The defendant argues that the exclusion of the only individuals who voiced a difficulty with the death penalty effectively created a jury more prone to instituting the death penalty than a life sentence. As authority for setting aside his conviction on such grounds, the defendant cites *Witherspoon v. Illinois,* (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, where the Supreme Court of the United States held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. at 522, 88 S.Ct. at 1777. In the instant case, however, the jurors were not challenged for cause. Rather, they were peremptorily challenged, and, as was stated in *Adams v. State,* (1972) 259 Ind. 64, 271 N.E.2d 425, a peremptory challenge may be for no cause whatsoever. In addition, *Witherspoon* requires only that the sentence be reversed, not the conviction. Having determined that the death penalty cannot stand in this case, we need go no further.

## ISSUE III

State's Exhibits Nos. 4, 5, 13, 14, 15, 16 and 17 were photographs of the decedent and were admitted into evidence over the defendant's objection that they were of

such a nature as to incite and shock the jury.

Exhibits 4 and 5 portray the decedent's nearly nude body as it was found approximately three days after her murder. Exhibits 13 and 16 are photographs of decedent's body and particularly depicted massive bruising in the neck and shoulder area. We do not find these photographs to be gruesome or inflammatory and they have unquestioned relevance and value for depicting a possible motive and the manner in which the decedent met her death.

Exhibits 14 and 15 are autopsy photographs and not favored by this Court. *Kiefer v. State*, (1958) 239 Ind. 103, 153 N.E.2d 899. They were relevant to the cause of decedent's death and were utilized by the pathologist in explaining and illustrating to the jury how he arrived at his opinion as to the cause of death. Exhibit No. 17 depicted the face, neck and chest of the decedent, as she was found by the police. Massive bruising of the neck and bleeding from the mouth indicated that she had been violently choked, and the presence and development stage of fly larvae on the eyes evidenced the time of death. These photographs are gruesome and tend to incite the passions. Nevertheless, they had sufficient relevance to authorize their admission into evidence. *Hoover v. State*, (1978) Ind., 376 N.E.2d 1152; *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264; *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482.

### ISSUE IV

During direct examination, the State questioned Dr. DeGraffenried, who had performed an autopsy, as to whether any examination had been made with respect to determining whether or not the victim had been sexually molested. Defense counsel objected on the grounds that the possibility was not in issue at that time. The objection was overruled and Dr. DeGraffenried stated that an examination had been made which showed no signs of any molestation. Dr. DeGraffenried was then asked whether, given the conditions under which the body was found, he would expect to find the presence of spermatozoa assuming that it had been present three days before his examination. Once again defense counsel objected upon the grounds that the question was irrelevant. The objection was overruled and Dr. DeGraffenried testified that it was possible that they would have been destroyed.

The defendant took the stand and during cross examination by the State, was asked the following:

"Q. Would you tell us if you recognize that scene because you were there that day, right?

"A. No.

"Q. Because you went out there and you are the person that took the clothes off that woman and left her in that condition?

"A. If the clothes were taken off, somebody else took them off not me.

"Q. Because you are also the person that beat her in the back of the head with a club that day, right?

"A. Wrong.

"Q. Did you try to sexually molest that woman on that day?

*Mr. Mulligan*: I am objecting to that as argumentative based for the sole reason of inciting the jury and there is no reason of inciting the jury and there is no charges about that, no evidence regarding that. I move for a mistrial at this time, Your Honor.

*The Court*: Objection overruled. Motion denied.

"Q. Didn't you?

"A. No, I didn't."

In addition, the defendant objects to a series of questions asked of Dr. Ikeda, a psychologist who had examined the defendant, concerning the defendant's sexual history and the connection between criminal acts and personality defects in the form of sexual abnormalities. Since his objections at trial were based upon grounds similar to those raised in Issue V, we will discuss his assertion of error with regard to Dr. Ikeda's testimony therein.

On appeal, the defendant contends that the foregoing questioning was irrelevant since the defendant had not been charged with rape, and that it was introduced solely to prejudice the jury against the defendant. The State argues, however, that the questioning was admissible to complete the story of the crime, since the inescapable inference to be drawn from the condition in which the decedent was found, was that she had been sexually molested. Evidence of noncharged crimes may be admitted under the theory of res gestae, where each of the crimes is part of an uninterrupted transaction. Gross v. State, (1977) 267 Ind. 405, 370 N.E.2d 885; Clay v. State, (1976) 264 Ind. 495, 346 N.E.2d 574. We agree with the State that, from the pose in which the decedent was found and her nearly nude state, it could be reasonably inferred that she had been sexually molested, and, therefore, questioning along those lines was relevant to the motive for the crime.

## ISSUE V

As a part of the evidence in defense, the defendant called Dr. Ikeda, a psychologist, who testified that he had interviewed and observed the defendant, on two occasions for a total of approximately four hours, and that from such interviews and observations, he was of the opinion that the defendant possessed no homicidal tendencies.

On cross-examination, the trial prosecutor propounded hypothetical questions to the witness predicated upon the near-nude state of the decedent's body, as had been disclosed by the State's evidence and upon assumed facts relating to the defendant. The assumptions were of prior acts of violence, including two attempted rapes by force. The questions propounded were whether or not knowledge of such circumstances would have been beneficial in assessing the defendant's tendencies to be homicidal and whether or not the witness was aware of such circumstances when he made his assessment.

Subsequently, during the presentation of the State's rebuttal evidence, the trial prosecutor presented evidence of the aforementioned acts of violence, previously assumed. Defendant has cited a number of cases in support of the proposition that the prosecution may not introduce evidence of other criminal acts of the accused, unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character. He then proceeds to a consideration of several exceptions to the rule, such as the exception for impeachment of witnesses and the exception for establishing intent, motive, purpose, etc. The proposition excluding such evidence is simply an application of the more broad rule which forbids the initiation of evidence of the bad character of the defendant merely to give rise to an inference that he is, therefore, more likely to be guilty. However, when the accused himself offers evidence of his character, in this case, evidence that he had no homicidal tendencies, he opens the door to the subject of his character for the trait placed in issue, and the State can introduce evidence of specific misconduct to depreciate the weight of the evidence presented by the accused; and this is true, even though such evidence may incidentally impute to him other guilt. Lineback v. State, (1973) 260 Ind. 503, 296 N.E.2d 788, Reh. Den. 301 N.E.2d 636; Jordan v. State, (1953) 232 Ind. 265, 268, 110 N.E.2d 751. Such evidence was also admissible for the purpose of impeaching the opinion testimony of the defendant's witness, Dr. Ikeda. The witness had acknowledged, upon cross-examination, that he was not aware of the prior occurrences of violence by the defendant and that such information would have been "very essential." By showing the prior violent acts of the defendant, the State disclosed that Dr. Ikeda's opinion was entitled to little, if any, weight because it had been formed upon grossly incomplete background information.

## ISSUE VI

While the jury was deliberating, the foreman requested that he be allowed to speak

to the judge. The prosecutor and defense counsel were summoned, but defense counsel was unavailable. The foreman was brought into open court, where he asked a legal question of the judge, which had not been covered in the instructions. His question concerned the necessity of reaching verdicts on all four counts of the indictment. The judge responded that the verdicts would be good on the counts upon which the jury could agree, even if they could not agree upon all counts. Defense counsel returned after the discussion had taken place, but before the foreman had returned to the jury room. The judge repeated the question asked and the answer given. Although defense counsel indicated that he felt that the discussion should not have taken place in his absence, he made no objections to anything that had occurred, nor did he address any motion to the error.

■■■ A defendant's involuntary absence from any stage of the proceedings gives rise to a presumption that prejudicial error has occurred. Such presumption, however, may be rebutted by evidence to the contrary. *Harris v. State*, (1968) 249 Ind. 681, 231 N.E.2d 800. In this instance, the irregularity was known to defense counsel in time for him to seek corrective measure, if he deemed his client was thereby subject to harm. It was apparent that no harm could come from the incident, hence he sought neither the declaration of a mistrial nor the substitution of an alternate for the exposed juror, and the error was, thereby, waived.

Additionally, the defendant argues that he was prejudiced by a conversation which took place between the judge and the foreman in open court in the presence of both the State and defense counsel, during the second stage of the bifurcated proceedings. The defendant has failed to show how he has suffered any prejudice therefrom, and as we have already determined that the death penalty which was imposed during that proceeding must be vacated, we need not consider the contention further.

## ISSUE VII

■■■ The defendant presents this issue on the assumption that he would prevail upon issue No. I and that the death penalty would be vacated. He correctly contends that he may not be sentenced to life imprisonment upon both his conviction for murder in the first degree and his conviction for killing a human being while perpetrating or attempting to perpetrate a kidnapping, said homicides being of one and the same person. *See* Issue I. Inasmuch as the same homicide provides the basis for both murder convictions to allow both judgments to stand would amount to double punishment. *Bean v. State*, (1978) Ind., 371 N.E.2d 713; *Franks v. State*, (1975) 262 Ind. 649, 323 N.E.2d 221. Therefore, defendant may be sentenced upon but one of the homicide verdicts.

■■■ The defendant also contends with regard to his sentence, that the trial court erred in failing to grant him credit for time served. It does not appear from the record that the defendant was either granted or denied credit, presumably since he had been sentenced to death. Regardless, however, the defendant is entitled to credit for the time served subsequent to his arrest. Ind. Code § 35–8–2.5–2 (Burns 1975); *Franks v. State, supra; Brown v. State*, (1975) 262 Ind. 629, 322 N.E.2d 708.

## ISSUE VIII

As his final assertion of error, the defendant contends that the evidence was insufficient to support his convictions, in that the State failed to establish the elements of malice and premeditation and the existence of a separate intent to kidnap.

■■■ On reviewing a sufficiency question, we, as a court of review, will neither reweigh the evidence nor judge the credibility of the witnesses. *Beasley v. State*, (1977) 267 Ind. 396, 370 N.E.2d 360; *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. Rather, we will look only to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom in determining whether the evidence supports the jury's finding on each of

the elements of the crime charged beyond a reasonable doubt. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

The evidence when viewed in such a light discloses that early in the morning on May 10, 1976, Wilma and Reynaldo Rosado were hitchhiking from Gary to Valparaiso when they were picked up by the defendant. The defendant agreed to take Mrs. Rosado to the courthouse in Valparaiso and in exchange, Rosado offered to help him pick up some scrap iron. After returning to pick up Mrs. Rosado, the three drove east on Highway 6. As they came to a country road, the defendant drove off the highway into a wooded area, and drew a gun. He held the gun to Rosado's face, ordered both of the Rosados out of the car and marched them through the woods. As they walked, the defendant repeatedly stated that he was going to kill them. Rosado pleaded for his life at which time the defendant told him to get down on his knees. The defendant then knocked him unconscious. Rosado was later found at a farmhouse suffering from a bullet wound to the head. His wife's dead body was found several days later, a few hundred feet into the woods. The cause of death was found to be a blow to the back of the head with a blunt instrument.

 We disagree with the defendant's contention that insufficient evidence was presented to establish the elements of malice and premeditation necessary to a conviction of first degree murder. Malice may be inferred from the intentional use of a deadly weapon in a manner likely to cause death or great bodily injury, with the purpose to kill inferred from the act of killing. *Kerns v. State*, (1976) 265 Ind. 39, 349 N.E.2d 701, and cases cited therein. Premeditation is defined as to the holding in the mind and reflection upon a thought. *Holt v. State*, (1977) 266 Ind. 586, 365 N.E.2d 1209. The existence of the deliberation rather than its duration, is the requisite element of premeditation. *McCurdy v. State*, (1975) 263 Ind. 66, 324 N.E.2d 489.

Rosado testified that the defendant repeated several times as they were walking through the woods, that he intended to kill them. After pleading with the defendant to spare their lives, Rosado was struck unconscious. Wilma Rosado was found with various injuries to her body, including the blows to her head and spine which resulted in her death. All the evidence supports a conclusion that the defendant acted with the requisite malice and premeditation necessary to sustain his conviction for first degree murder.

The defendant also challenges the evidence supporting his conviction of kidnapping, which kidnapping allegedly took place when the victims were transported, at gun point, from the car to the location where the decedent was killed. The defendant contends that only one intent existed from the time they left the car to the time they reached the woods, that being the intent to commit murder. Further, he contends that to find two separate intents would be tantamount to finding that any coerced movement which occurs during the commission of a crime constitutes a kidnapping.

 We have previously rejected the defendant's argument. Where the intent requisite to a kidnapping charge is present, the purpose for the kidnapping is immaterial. *Feller v. State*, (1976) 264 Ind. 541, 348 N.E.2d 8; *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352; *Wilson v. State*, (1970) 253 Ind. 585, 255 N.E.2d 817. "We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts." *Wilson v. State, supra* at 592, 255 N.E.2d at 822.

 Finally, the defendant challenges the State's proof of venue. Once again, we find no merit in the defendant's claim, inasmuch as several officers testified that the decedent's body was found in Starke County, several hundred feet from where Rosado testified that he was rendered unconscious by the defendant.

We find no reversible error. The cause is remanded to the trial court with instructions to vacate the sentence of death and to

give the defendant credit for the time served between his arrest and his sentencing. In all other respects, the judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER, J., concur.

DeBRULER, J., concurs in result.

PIVARNIK, J., not participating.