**Stephen BYRD, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 48S04–9206–CR–467.

Supreme Court of Indiana.

June 18, 1992.

Jeffrey A. Lockwood, Mitchell P. Chabraja, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lewis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

■ The question is whether the results of a Minnesota Multiphasic Personality Inventory (MMPI) may be admitted to prove that a defendant's character is inconsistent with committing intentional murder. We hold that they may not.

Byrd was convicted of the murder of Linda Chafin and of battery on her friend Vicki Hobbs. He was sentenced to forty years for the murder and eight years for the battery, to be served concurrently. The Court of Appeals reversed, finding two errors. First, it held that the trial court erred in disallowing defense testimony by Dr. Larry M. Davis, a psychiatrist who had examined Byrd. Dr. Davis would have testified that the defendant's personality profile as measured by the MMPI was inconsistent with the charge of murder. The Court of Appeals also found error in the exclusion of Dr. Davis' proffered testimony that Byrd's asserted memory loss was consistent with clinically observed "retrograde amnesia," thereby supporting Byrd's claim that he could not remember committing the crimes. The Court of Appeals ordered a new trial. *Byrd v. State* (1991), Ind.App., 579 N.E.2d 457.

The State petitioned for transfer, arguing that Dr. Davis' testimony was properly excluded. Whether a defendant can present expert testimony based on a psychological test that his personality is not consistent with committing a particular crime is a novel question in this state.[1] We grant transfer to consider this question of first impression.

In summary, we conclude that a defendant may introduce evidence of his good character only for particular traits that are

---

1. Although we have found cases in which defendants presented similar expert testimony by psychologists, *see Bond v. State* (1980), 273 Ind. 233, 403 N.E.2d 812; *Robertson v. State* (1974), 262 Ind. 562, 319 N.E.2d 833; *Storey v. State* (1990), Ind., 552 N.E.2d 477, the admissibility of such testimony was not directly addressed by the Court.

relevant to the crime charged. This is an exception to the general rule that character evidence is inadmissible to show conduct in conformity therewith. Expert opinion is not an appropriate way, however, to prove a defendant's character for a particular trait.

### Admissibility of Character Evidence

■ We begin with Indiana's general rule that evidence of a defendant's character is not admissible to prove the defendant acted in accordance with that character on the occasion in question. Robert L. Miller, Jr., *Indiana Practice* § 404.101 (West 1984). This rule of evidence prohibits the prosecution from initiating the presentation of evidence about a defendant's bad character merely to give rise to an inference that he is therefore more likely to be guilty. *Bond v. State* (1980), 273 Ind. 233, 240, 403 N.E.2d 812, 818. This rule is also employed by defendants to keep out evidence of their prior bad acts and convictions. *See, e.g., Williams v. State* (1986), Ind., 489 N.E.2d 53.

Occasionally, a defendant has sought to introduce reputation evidence of his good character as a defense to the crime charged, and we have long held that a defendant may initiate the introduction of such evidence. *Wagner v. State* (1886), 107 Ind. 71, 7 N.E. 896. A majority of jurisdictions recognize this exception to the general rule and, pursuant to it, permit a defendant to introduce evidence of his good character only for particular traits relevant to the conduct for which he is accused. *See, e.g., Daly v. State*, 99 Nev. 564, 665 P.2d 798 (1983) (and cases cited therein); 23 C.J.S. *Criminal Law* § 820 (1989); Federal Rule of Evidence 404(a)(1). For example, while the trait of "law-abidingness" may be pertinent in virtually all criminal cases, *State v. Squire*, 321 N.C. 541, 364 S.E.2d 354 (1988), evidence of a defendant's character for truth and veracity would be admissible only when (1) a lie by the defendant is an element of the crime, (2) the defendant has testified on his own behalf and his credibility has been attacked, or (3) the truth of the defendant's out-of-court statements have been attacked. *Daly*, 665 P.2d at 803. A defendant's character witness may not, however, testify about specific laudatory acts by the defendant. *Lax v. State* (1981), 275 Ind. 34, 414 N.E.2d 555.

Ordinarily, character evidence consists of lay testimony from people who knew the defendant and his reputation prior to commission of the offense. The character evidence at issue today is different; Byrd's expert or "professional" character witness based his opinion on Byrd's behavior after the offense and on MMPI test performance. As Justice Newman of the Iowa Supreme Court has noted, this type of testimony comes cloaked with an "aura of scientific reliability" that certain individuals are or are not predisposed to commit a particular crime. *See State v. Hulbert*, 481 N.W.2d 329, 333 (Iowa 1992) (no abuse of discretion in exclusion of evidence of defendant's "normalcy" as exhibited on a personality profile).

### Limits on Expert Opinion

■ Expert opinion is not admissible on all issues. The question of a defendant's intent to commit a crime is not a proper subject for expert opinion, as this matter is a question of fact for the jury. *Reichard v. State* (1987), Ind., 510 N.E.2d 163; *Seeglitz v. State* (1986), Ind., 500 N.E.2d 144.[2] Moreover, an expert is not permitted to give an opinion on the guilt or innocence of the defendant. *Ross v. State* (1987), Ind., 516 N.E.2d 61. Expert testimony is appropriate, however, when it concerns matters that are not within the common knowledge and experience of ordinary persons and it would aid the jury. *Stewart v. State* (1988), Ind., 521 N.E.2d 675. Generally, the admissibility of expert testimony is a matter assigned to the discretion of the trial court; we review it on appeal only for abuse of discretion. *Seeglitz*, 500 N.E.2d at 147.

One difference between expert witnesses and lay witnesses is that experts often base

2. Expert opinion concerning a defendant's capacity to form intent is governed by different standards, as the cases on the insanity defense demonstrate.

their opinions on tests which they have administered. We have held that opinions based on certain tests or procedures are admissible when "the thing from which the deduction is made [is] sufficiently established to have gained general acceptance in the particular field in which it belongs." *Cornett v. State* (1983), Ind., 450 N.E.2d 498, 503 (quoting *Frye v. United States,* 293 F. 1013, 1015 (D.C.Cir.1923)).[3] Blood testing to prove paternity and DNA testing to prove identity are considered sufficiently objective and reliable to serve as a basis for expert opinion. Ind.Code § 31–6–6.1–8 (West Supp.1991); *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297.

Other tests are not considered sufficiently reliable to be generally admissible. For example, polygraph tests are generally inadmissible because their value is highly questionable and the jury may attach undue weight to the results. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068. Such test results are only admissible if certain prerequisites are met, including that the prosecutor, defendant, and defense counsel all sign a written stipulation providing for defendant's submission to the test and its subsequent admission at trial. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077. Voice spectrography is another test which is generally inadmissible. *Cornett,* 450 N.E.2d at 503.

Psychological expert opinion is most often used in cases in which a defendant's competence to stand trial or sanity is in issue, or during the penalty phase of capital cases. *Corbin v. State* (1990), Ind., 563 N.E.2d 86 (insanity); *Miller v. State* (1979), 271 Ind. 260, 392 N.E.2d 445, *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1051, 62 L.Ed.2d 776 (1980) (competency); *Moore v. State* (1985), 479 N.E.2d 1264, 1278, *cert. denied,* 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565 (1985) (death penalty). Expert opinion based on the MMPI itself has been admitted in Indiana with regard to a defendant's potential for rehabilitation. *See Van Cleave v. State* (1987), Ind., 517 N.E.2d 356, 361, *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989). In other states such evidence has been admitted on all of the above issues.[4]

### *Expert Character Evidence*

Admitting psychological testing on issues such as competence or insanity seems quite straightforward; admitting it on the question of defendant's likelihood to have committed a particular crime is quite a different matter. Unlike other more objective scientific tests (such as DNA testing), there is no suggestion that the MMPI is an accurate or objective indicator of whether a particular defendant committed the crime charged.[5] Dr. Davis testified during the defendant's offer of proof that the MMPI is a testing device which has been used for decades for "evaluating characteristics of an individual's personality," and for "establishing their emotional state *at the time of testing,* such as states of depression, anxi-

**3.** Because we do not decide this case by applying the *Cornett/Frye* test, we save for another day the question of whether reliability in the relevant scientific community is always a requirement for the admittance of expert testimony. *See Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, 1305 (Dickson J., concurring).

**4.** *See, e.g., Stripling v. State,* 261 Ga. 1, 401 S.E.2d 500 (1991), *cert. denied,* — U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991) (evidence introduced in guilt phase of capital trial concerning defendant's mental illness); *State v. McMurtrey,* 151 Ariz. 105, 726 P.2d 202 (1986), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 530 (1987) (testimony regarding defendant's MMPI results permitted during sentencing phase in which defendant received death penalty); *Moss v. State,* 704 S.W.2d 939 (Tex. App.1986) (MMPI admitted on issue of insanity by stipulation of the parties); *State v. Skjonsby,* 417 N.W.2d 818 (N.D.1987) (testimony based on MMPI results admitted on question of defendant's ability to assist in his own defense); *People v. Bowman,* 141 Mich.App. 390, 367 N.W.2d 867 (1985) (competency); *State v. Huntley,* 302 Or. 418, 730 P.2d 1234 (1986) (enhanced sentence).

**5.** During the offer of proof Dr. Davis testified that the MMPI "is only predictive when interpreted clinically. I don't believe the MMPI in and of itself is as it stand[s] alone is a predictor." Record at 1179. It is not clear what Dr. Davis considered his clinical interpretation of the MMPI might predict. In light of his previous testimony, however, we assume he meant it would be predictive of personality traits and not of whether criminal activity took place.

ety, disturbed thinking, etc." Record at 1172–74 (emphasis added). The MMPI is used as an assessment device to aid the psychologist or psychiatrist in treating a person, not for determining whether particular conduct has occurred in the criminal context. *Cf. Flanagan v. State*, 586 So.2d 1085, 1117 (Fla.App.1991) (Ervin, J., concurring and dissenting) (profile a therapeutic tool for evaluating whether child suspected of being abused should be removed from environment where abuse may have occurred); *People v. Ruiz*, 222 Cal.App.3d 1241, 272 Cal.Rptr. 368, 370 (1990) (MMPI not designed to determine if the subject being tested is a pedophile or sexual deviant).

Some courts have approached the use of psychological profiles on the issue of guilt or innocence by applying reliability tests such as *Frye* to determine whether the technique has gained general scientific acceptance. *E.g., State v. Cavallo*, 88 N.J. 508, 443 A.2d 1020, 1025 (1982) (profile testimony offered to prove sexual abuse had not occurred excluded because not shown to be scientifically reliable); *State v. Pearson*, 20 Conn.App. 115, 564 A.2d 626 (1989) (testimony that defendant did not fit profile of pedophile properly excluded because *Frye* test not met). The parties to this litigation, however, have not presented us with argument or evidence about the general reliability of the MMPI and its use as a predictor of guilt. Accordingly, we think that resolving the MMPI issue on that basis is inappropriate on this record.

We therefore address this issue as one of expert character evidence offered by the defendant to prove his good character. We adopt the majority rule and hold that a defendant may present evidence of his good character only for particular traits that are relevant to the acts charged. Byrd sought to introduce testimony by Dr. Davis that in his opinion Byrd's personality profile was inconsistent with the crime of murder. Record at 1177.[6] Dr. Davis further testified during the offer of proof that he based his opinion on his assessment of various traits such as passivity, aggressiveness, assertiveness, and social skills of the defendant. Record at 1178. However, he did not give his opinion of defendant's character for these specific traits. The proposed testimony was essentially that defendant is not the "type" of person who would commit murder.

Byrd argued that this testimony was relevant to the knowing or intentional element of the charge of murder. We cannot conclude that such generalized testimony about a defendant's personality constitutes evidence of his character for a particular relevant trait. Nor do we think that expert opinion, whether based on a personality profile or not, is an appropriate way to prove a defendant's character for a particular trait. *Cf. Hulbert*, 481 N.W.2d 329. Indiana generally permits evidence of a defendant's good character to be proven only by testimony about his reputation in the community.[7] *Anderson v. State* (1984), Ind., 471 N.E.2d 291.

---

**6.** Dr. Davis testified as follows:

Q. Doctor, given all of the techniques that were used, clinical interview, MMPI, and test that you conducted, do you believe that you were able to form an accurate opinion of this psychological profile?
A. Yes I think so.
Q. Doctor do you have an opinion within a reasonable degree of medical certainty whether or not the allegations contained in Count I of the Information charging Murder are inconsistent with the defendant's personality profile?
A. Yes I have an opinion.
Q. What is that opinion?
A. It is my opinion that the assessment that I have conducted finds the personality structured profile of the defendant to be inconsist-

ent with the charges as I understand them that you have just described.
Q. You do understand and did at the time of the interview that the defendant was charged with Murder?
A. Yes that is my understanding.
Q. And that he knowingly ..... allegedly knowingly or intentionally killed another human being? .
A. I understand those charges are ..... that he is facing those charges.
Record at 1176–77.

**7.** Although permitted by many jurisdictions and the federal rules, we save for another day the question of whether lay opinion testimony would be admissible to prove a particular trait relevant to the crime charged.

■ Our reluctance to sanction such broad expert testimony is based in part on the events which would be set in motion by permitting it. Once a defendant opens the door to the subject of his own character, the State may introduce evidence of specific misconduct for the trait placed in issue to depreciate the weight of the evidence presented by defendant. *Bond,* 403 N.E.2d at 818. Because of the subjective nature of psychiatric testimony we would feel obligated to permit the State to present its own expert witnesses to rebut defendant's expert, creating a potential "battle of the experts." *See, e.g., Cavallo,* 443 A.2d at 1025; *People v. Stoll,* 49 Cal.3d 1136, 265 Cal.Rptr. 111, 125, 783 P.2d 698, 712 (1989) (defendant may present character evidence that psychologist believes his personality is inconsistent with crimes charged, and state may call in rebuttal comparable expert to challenge defense expert.) The value of this contest of experts to the process of finding guilt or innocence seems very modest when compared with tangible evidence and eyewitness accounts. There is also the likelihood the jury may place excessive weight on character assessments made by an expert. *Cavallo,* 443 A.2d at 1025.

The exclusion of this evidence was therefore not error. We otherwise summarily affirm the Court of Appeals' opinion. Ind.Appellate Rule 11(B)(3). The cause is remanded to the trial court for retrial.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.