Cody W. HALL *v.* STATE of Arkansas

CA CR 84-126                                          692 S.W.2d 769

Court of Appeals of Arkansas
Division I
Opinion delivered July 3, 1985

*Dennis Hyslip*, Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. The appellant was convicted in a jury trial of two counts of sexual abuse in the first degree. He was sentenced to six years imprisonment on each count to run

consecutively.

Testimony was presented to the effect that the events for which the appellant was convicted took place while the appellant was babysitting for three young children, an eight-year-old boy, his six-year-old sister, and another girl who was nine years old. The defendant, who was 32 years old, was at the house where the brother and sister lived and was visiting with their mother when her cousin came over. The cousin and her husband left their little girl there while they went to a tavern where the husband performed as a musician. After they left, the appellant agreed to babysit the children while the boy and girl's mother went to the tavern also.

There was testimony from the children that while they were alone with the appellant, he played hide and seek with them, got them to smoke some marijuana, held the girls on his lap while he rubbed them between the legs and got them to touch his penis. The children all testified that they had known the appellant for some time and that he had authority over them. They also said he told them not to tell what had happened. The appellant denied any sexual molestation of the girls.

Several points are argued by the appellant for reversal of his conviction. We first discuss the testimony of an expert witness, Donna Van Kirk. This witness testified that she was a licensed psychologist with a bachelor's degree in sociology and a doctorate in counseling. She had completed a year of clinical training at Children's Medical Center in Tulsa, which is a psychiatric and pediatric unit for children. She had worked at Ozark Guidance Center evaluating children for intellectual and emotional handicaps and she had done family, group, and individual counseling. She also had tested a large number of children, some of whom had been sexually abused, and had testified as an expert witness in juvenile and circuit courts.

This witness's testimony dealt with what was termed some of the dynamics of child sexual abuse cases. Her testimony was that in 75 to 80 percent of such cases the perpetrator is known to the child ahead of time, is a relative or friend of the family, and has implied or explicit authority over the children, maybe as a teacher, grandparent or babysitter. The children are almost always told not to tell what has happened. Fifty percent of child

sexual abuse cases occur in the home of the child or the perpetrator.

Dr. Van Kirk testified that children typically do not have the vocabulary to discuss the sexual abuse they experience. They may not know names for genitals; they have not developed concepts of time and distance; and they tend to get things out of sequence. Based on her training and experience, the witness testified that children in sexual abuse cases suffer psychological damage. This is expressed in a number of ways. They may respond by bedwetting, loss of appetite, refusal to go to school. They may cling to the parent, be reluctant to go out of the house or yard, develop a tic.

The expert said that, in her opinion, an adult's abuse of a child is not sexually motivated, and not gratifying, but is an abuse of power; that the "psychological profile of a perpetrator" is usually heterosexual and they have an adult sexual partner; the first offense is virtually always committed before the age of 40; and alcohol or drugs is "often a dynamic."

This witness said she had not examined any of the children involved in this case. She did not know and had not examined the appellant. The information to which she testified was based mostly on national statistics. The only personal knowledge she had in regard to the case came from what the prosecuting attorney and deputy prosecuting attorney had told her from the police reports.

The appellant's first objection, during the course of the expert's testimony, was that her testimony should be confined to this specific case rather than to generalities. The court overruled the objection but told the prosecutor to narrow the testimony to "child sexual abuse" since "child abuse" covered a large range. Appellant's next objection was to testimony about the "dynamics of such cases" based on the expert's general knowledge since she had never seen either of the girls involved in this case. The court overruled that objection with an admonition to the jury that the testimony did not in and of itself relate to these particular girls. Next, the appellant objected to the witness' expressing an opinion as to the likelihood of children's fabricating stories about sexual abuse. This objection was sustained. Finally, appellant objected to the question of whether children had mental shortcomings that

would cause them trouble when relating a sexual abuse case to adults. This objection was overruled.

Appellant cites *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (Ark. App. 1980), where the court noted that the general test as to the admissibility of expert testimony is whether it can give the jury "appreciable help" and whether its probative value will exceed its prejudicial effect. The appellant argues that the testimony of Dr. Van Kirk fails to pass either prong of this general test. The appellee, however, calls our attention to the fact that the admissibility of expert testimony is largely within the proper discretion of the trial judge, and points to the fact that the trial judge had excluded the expert testimony in *Caldwell* whereas here the testimony was admitted. We are also told that a number of jurisdictions allow similar expert testimony in cases like the one before us. Four cases are cited in support of that statement.

In *United States* v. *Winters*, 729 F.2d 602 (9th Cir. 1984), the defendant was charged with kidnapping two women and transporting them in interstate commerce for immoral purposes. Testimony was introduced to the effect that he had beaten and raped both women during a journey across several states. The defendant directed the jury's attention to the fact that the women had failed to take advantage of opportunities to escape or call for help. In order "to assist the jury in understanding the women's conduct and to dispel any notion that they voluntarily submitted" to the defendant, the government called a psychiatrist as an expert witness. This witness was allowed to testify that the women had suffered from "post-traumatic stress disorder" described as a profound personality change following a period of severe psychological stress. The expert said this explained failure of the women to attempt escape or to cry out for help in a public place. Another expert was allowed to testify to the conditioning process that women subjected to forced prostitution go through and how eventually only subtle threats will maintain control over them. The court said the expert testimony concerned matters beyond the common knowledge of the average layman and that it would assist the jury to understand the evidence.

In *State* v. *Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978), a man was convicted of second-degree murder of his two-year-old

son. A medical doctor, who had performed an autopsy on the child, testified as to the injuries he found on the child's body and was allowed to state his opinion that the child was a "battered child" which he defined as one "who died as a result of multiple injuries of a non-accidental nature." He explained that "non-accidental" injuries were not those resulting from the everyday life and activities of a child but those often seen where children have been severely punished. The court held that this was permissible medical expert testimony and noted that the doctor did not express any opinion as to who caused the injuries he observed.

On the other hand, in *People* v. *Bledsoe*, 36 Cal. 3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984), the defendant was convicted of the forcible rape of a 14-year-old girl. Expert testimony of a rape counselor was admitted and she testified that the girl suffered from "rape trauma syndrome." The expert said this was "umbrella terminology for what a rape victim experiences" and she described in some detail various phases and reactions that she said "99.9 percent" of rape victims are going to experience. The appellate court said the "rape trauma syndrome" was a rather recent term, coined by the authors of an article in 131 *Am. J. Psychiatry* 981, and that evidence based on the concept had been admitted in some cases to rebut inferences arising from evidence suggesting an inconsistency with the claim of rape. The court added:

> In the present case, however, the evidence was not admitted for any such purpose. Here, the victim promptly reported the attack, immediately exhibited the type of severe emotional reaction that the normal lay juror would associate with rape and suffered bruises and other physical injuries that corroborated her claim that she had been violently assaulted. As far as our review of the record reveals, defendant made no claim that Melanie's conduct or demeanor after the incident provided any basis for the jury to infer that she had not been raped.

> Thus, in this case, the prosecution introduced the rape trauma syndrome testimony, not to rebut misconceptions about the presumed behavior of rape victims, but rather as a means of proving—from the alleged victim's post-

incident trauma—that a rape in the legal sense had, in fact, occurred.

The fourth case cited by the appellee is *State* v. *McGee*, 324 N.W.2d 232 (Minn. 1982), which is a brief opinion reversing a conviction because of the "rape trauma syndrome" evidence of an expert witness. Without any discussion, the opinion simply cites *State* v. *Saldana*, 324 N.W.2d 227 (Minn. 1982). In *Saldana*, the defendant admitted that sexual intercourse had occurred but claimed it was consensual. The opinion states that in an attempt to rebut that claim, the state presented an expert witness who "described the typical post-rape symptoms and behavior of rape victims, and gave her opinion that the complainant was a victim of rape and had not fabricated her allegations. The appellate court reversed and held that the expert's opinions were inadmissible. In regard to "rape trauma syndrome" the court said, at best, it "describes only symptoms that occur with some frequency, but makes no pretense of describing every single case." And the court observed:

> The jury must not decide this case on the basis of how most people react to rape or on whether Fuller's reactions were the typical reactions of a person who has been a victim of rape. Rather, the jury must decide what happened in *this case*, and whether the elements of the alleged crime have been proved beyond a reasonable doubt. (Emphasis in the original).

In the instant case, we think the court erred in allowing some of the testimony given by the state's expert witness, Dr. Van Kirk. Three of the four cases cited by the appellee in support of the admissibility of the state's expert witness aptly demonstrate what is involved.

*Wilkerson* involved the testimony of a medical doctor who examined injuries inflicted upon a child and stated that in his opinion this was not the type of injuries that results from the everyday life and activities of a child but was the type of injuries often seen in children who have been severely punished. We lay aside questions concerning physical injury to "battered children" as not germane to the consideration of the case before us. The other three cases, however, are in point.

In *Winters*, the evidence concerned "post-traumatic stress disorder" and the conditioning process that the women there were subjected to through beatings and forced prostitution. This evidence was offered to explain why the women did not attempt to escape, and the court found it concerned matters beyond the common knowledge of the average layman and would be of proper assistance to the jury. On the other hand, *Bledsoe* and *Saldana* involved testimony concerning "rape trauma syndrome" which was described as "umbrella terminology" for what a rape victim experiences. In *Bledsoe*, the court said this testimony was introduced "not to rebut misconceptions about the presumed behavior of rape victims, but rather as a means of proving—from the alleged victim's post-incident trauma—that a rape in the legal sense had, in fact, occurred." In *Saldana*, the court said that the "rape trauma syndrome" evidence was not admissible because it tended to cause the jury to decide the case on the basis of how most people react to rape or on whether the reactions of the victim in *Saldana* were the typical reactions of a victim of rape, when the jury's obligation was to decide whether the elements of the crime had been proved in the case at hand.

■ It is our conclusion from the record in the case before us that the evidence of the expert, Dr. Van Kirk, tended to focus the attention of the jury upon whether the evidence against the defendant matched the evidence in the usual case involving sexual abuse of a young child. Much of the expert's testimony highlighted details that were parallel to the details in the case at hand. For example, the defendant here was known to the children involved. The expert testified that in 75% to 80% of such cases the perpetrator is known to the children involved. The children here were told not to tell what happened. The expert said the children are almost always told not to tell what happened. The crime here is alleged to have occurred in the home of the children. The expert testified that 50% of child sexual abuse cases occur in either the home of the child or the perpetrator. The defendant here was 32 years of age. The expert testified that in child abuse cases the first offense is virtually always committed before the age of 40. The defendant here had had trouble with alcohol. The expert testified alcohol or drugs is "often a dynamic." Other details could be recited but it is enough to say that we feel this type evidence was not of proper benefit to the jury in this case and that, as in *Bledsoe*,

it was not introduced to rebut a misconception about the presumed behavior of a rape victim but to prove, as in *Saldana*, that the circumstances and details in this case match the circumstances and details usually found in child abuse cases. Of course, some of the expert's testimony in this case could be of benefit to the jury. Her testimony regarding the vocabulary that young children have to express their experience in sexual abuse cases is legitimate and beneficial evidence for the jury. But, overall, we find much of the expert's testimony distractive and prejudicial.

Because of the admission of the evidence discussed above, over objections to testimonial generalities concerning the "dynamics" of child abuse, the conviction in this case must be reversed and the matter remanded for a new trial. Therefore, we discuss the other issues raised by appellant.

■ Appellant argues that the trial court erred in allowing one of the state's witnesses, aged six, to testify because she did not have the capacity to retain and transmit accurately to the fact finder what was seen, felt or heard, and was unable to directly answer certain questions as a competent witness must. *See Chambers* v. *State*, 275 Ark. 177, 628 S.W.2d 306 (1982). Appellant recognizes that this is a matter within the sound discretion of the trial court and that we will not overturn the trial court's decision without a showing of clear abuse of discretion. *Hoggard* v. *State*, 277 Ark. 117, 640 S.W.2d 102 (1982); *Hamblin* v. *State*, 268 Ark. 497, 597 S.W.2d 589 (1980). We find no error in the court's ruling on this point.

■ Appellant's next argument is that the court erred in allowing a witness in the courtroom after the rule, requiring that all witnesses be excluded from the courtroom except when testifying, had been invoked by both sides. When one of the young girls was called to testify, the prosecution requested that the court allow her mother, who had completed her testimony, to remain in the courtroom. Defense counsel's objection was overruled and the child's mother stayed in the courtroom during her daughter's testimony. Appellant argues that sequestering the witnesses is mandatory when requested and that allowing this witness to remain in the courtroom, even under the circumstances, was reversible error. In *Breeden* v. *State*, 270 Ark. 90, 603 S.W.2d

459 (1980), the Arkansas Supreme Court held that unless a party is shown to be essential to the prosecution of a case, he must be excluded from the courtroom upon request. The rule is mandatory and we agree with appellant that the girl's mother should have been excluded from the courtroom. The 1985 legislature may have enacted legislation in this regard. Otherwise, this witness should not be excused from the rule in the event of a retrial.

We do not agree with appellant's argument that the court erred in its refusal to instruct the jury as to the lesser included offense of indecent exposure. Appellant requested the following instruction:

> A person commits indecent exposure if, with the purpose to arouse or gratify the sexual desire of himself or of any other person, he exposes his sex organs: (a) In a public place or public view; or (b) Under circumstances in which he knows his conduct is likely to cause affront or alarm.

To constitute a lesser included offense, an offense must be "established by proof of the same or less than all the elements required to establish the commission of the offense charged." Ark. Stat. Ann. § 41-105(2)(a)(Repl. 1977). The crime with which appellant was charged, sexual abuse in the first degree, required proof that appellant, being over the age of eighteen years, engaged in *sexual contact* with a person less than fourteen years of age while indecent exposure required proof that the defendant *exposed his sex organs with the purpose of arousing or gratifying sexual desire*. Each offense requires an element that the other does not. Sexual abuse requires proof of a touching. Indecent exposure requires proof of exposure. Therefore, the two crimes do not meet the statutory definition of a lesser included offense since indecent exposure is not established by proof of the same or less than the elements required to prove sexual abuse. *See Henderson v. State*, 286 Ark. 4, 688 S.W.2d 734 (1985). The trial court did not err in refusing to give the requested instruction.

Finally, appellant argues that the court erred in refusing to instruct the jury that a minor, once qualified, is to be held to the same criteria of credibility as an adult witness. Appellant cites no authority in support of this contention and the

rule is that we do not consider an unsupported argument on appeal unless it is apparent without further research that it is well taken. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977). We note, however, that the court had given the jury the AMCI instruction on credibility of witnesses in general and we see no reason why this instruction did not adequately cover the issue of witness credibility. The Arkansas Supreme Court has consistently held that it is not error to refuse to give a requested instruction where the subject matter is fully covered by other instructions. *Wallace* v. *State*, 270 Ark. 17, 603 S.W.2d 399 (1980).

Reversed and remanded.

CORBIN and GLAZE, JJ., agree.