No. 61,563

STATE OF KANSAS, *Appellee*, v. JOHN F. CLEMENTS, JR., *Appellant*.

(770 P.2d 447)

Opinion filed March 3, 1989.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Mike Ward*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant, John F. Clements, appeals his conviction of aggravated criminal sodomy, K.S.A. 21-3506, claiming

that he was denied his statutory right to a speedy trial, K.S.A. 22-3402, and that the trial court erred by permitting the State's expert witness to explain the psychology and treatability of sexual offenders to the jury. We find that, although the defendant's statutory right to a speedy trial was not violated, admission of the expert testimony violated the defendant's right to a fair trial and we reverse.

In 1985, Clements was charged with aggravated criminal sodomy of P.V., an eleven-year-old boy, and two counts of promoting obscenity to minors, K.S.A. 21-4301a, in connection with two other minor boys. The jury convicted Clements on the obscenity charges, but its inability to reach a verdict on the sodomy charge resulted in a mistrial as to that charge. Upon retrial of the sodomy charge in 1986, Clements was convicted. He appealed, claiming the trial judge improperly admitted his 1982 conviction for sodomy as evidence of a prior crime relevant to prove plan or scheme under K.S.A. 60-455. A majority of this court determined that the evidence of the prior crime was not admissible under 60-455 since it was only used to infer that, because Clements had committed a similar crime in the past, he committed the crime charged. His conviction was reversed and remanded for a new trial. *State v. Clements*, 241 Kan. 77, 734 P.2d 1096 (1987).

The clerk of the district court of Butler County received the mandate of this court on May 26, 1987. On June 8, 1987, defendant was arraigned, counsel was appointed, and Judge Sanders set the new trial for September 1, 1987. Both the judge and the State were under the mistaken impression that the speedy trial statute mandated a trial within 90 days of *arraignment*, rather than 90 days of the date the mandate of the appellate court reversing the conviction is filed with the clerk of the district court. K.S.A. 22-3402(4). Despite defendant's objection, on July 15, 1987, or within the 90-day limitation, the district judge continued defendant's September 1 trial date to September 22, 1987, because of his crowded trial docket. K.S.A. 22-3402(3). After the expiration of 90 days from the date that the mandate of this court had been received by the clerk of the district court but prior to the September 22 trial setting, Clements filed a motion to dismiss, claiming that he had been denied his statutory right to a speedy trial. On September 16, 1987, defendant's motion was denied. Defendant's case proceeded to jury trial on September

22, 1987, and he was convicted of one count of aggravated sodomy. Defendant appeals, contending he was denied his statutory right to a speedy trial pursuant to K.S.A. 22-3402 and that the trial judge erred by allowing the State's expert to explain the psychology and treatability of sexual offenders to the jury.

### Speedy Trial

Under the Sixth Amendment to the Constitution of the the United States and § 10 of the Bill of Rights of the Kansas Constitution, the accused in a criminal prosecution is guaranteed the right to a speedy trial. In addition to the applicable provisions of the state and federal constitutions, the Kansas Legislature implemented a statutory limitation, K.S.A. 22-3402, which specifies the time within which an accused must be brought to trial.

Relevant portions of K.S.A. 22-3402 provide:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

. . . .

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

. . . .

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground.

"(4) In the event a mistrial is declared or a conviction is reversed on appeal to the supreme court or court of appeals, the time limitations provided for herein shall commence to run from the date the mistrial is declared or the date the mandate of the supreme court or court of appeals is filed in the district court."

Because Clements' conviction was reversed by this court, Clements had to be tried within 90 days after the mandate was filed in the district court, May 26, 1987, or within 120 days if the court ordered a statutorily authorized continuance. At defendant's arraignment on June 8, 1987, the district judge set a trial date of September 1, 1987. It is undisputed that this setting exceeded the statutory limitation which would have become effective August 24, 1987. However, on July 15, 1987, prior to expiration of the 90-day limitation, the district judge continued Clements' trial to September 22, 1987, under K.S.A. 22-3402(3)(d), due to the number of other cases already set for trial.

Clements asserts that, although he was brought to trial within the maximum 120 days allowed by the statute, he was denied his statutory right to a speedy trial. Clements reasons even if the continuance is based on one of the authorized reasons set forth in subsection (3) of K.S.A. 22-3402 the continuance could not cure the improper initial trial setting. An examination of the transcript of the July 15, 1987, hearing reveals the following statement by the judge:

"THE COURT: This case is 85 CR 282, the State of Kansas versus John F. Clements, Jr. Let the record show that the State is represented by Mr. Mike Ward of the Butler County Attorney's office. That John Clements, Jr. is present in person and by his court appointed counsel, Mr. Rusty Davis. Mr. Clements, the reason that I got you out this morning was because the Court has run into some scheduling problems in regard to your trial date. We originally set your trial date for September 1, beginning at 9 o'clock a.m. I have been asked to sit on the Court of Appeals on September the 1st and the 2nd. I have got all kinds of jury trials and other types of hearings scheduled all the way through August and the rest of July and quite aways into October and November. Under the statute about speedy trials, as the Court interprets that, that you have to be tried within 90 days. The Court, however, under 22-3402, subsections (3)(d): Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed by this section. There can be one continuance of not more than thirty (30) days ordered upon the grounds of the—the court's schedule. So, at this time, counsel, I'm going to have to reschedule this matter because of my schedule, and I've set September 22nd at 9 o'clock, and moved—knocked off some other cases and moved this one to September 22nd, but, I think this still gets us within the parameters. So, this case will be reset for the 22nd of September at 9 o'clock. I apologize Mr. Clements for not being able to hear it on the first, but my schedule is just in bad shape. Mr. Ward, is there any comment from the State . . . [?]"

At the September 16, 1987, hearing on defendant's motion for dismissal, the district judge noted that when he realized that defendant needed to be brought to trial by August 26, 1987, he examined his docket and determined that due to other cases pending for trial it would be necessary to grant a continuance. He stated: "My docket was virtually impossible. This judge simply did not have the time to get Mr. Clements to trial by August 26."

Clements erroneously cites *State v. George,* 9 Kan. App. 2d 479, 681 P.2d 30 (1984), as authority for dismissal. George was brought to trial on the 182nd day after the declaration of a mistrial. No continuance authorized by statute had been exer-

cised during the 180 days. After the 180-day limitation had expired, the trial judge stated that the continuance had been required due to a crowded trial docket. The Court of Appeals reversed, holding that under K.S.A. 22-3402 a statutorily authorized continuance must be granted within the initial 180-day limitation.

Here, even though the district judge failed to follow the proper statutory procedure when determining the expiration of the 90-day limitation for retrial of the defendant, the 30-day continuance due to a crowded trial docket was ordered prior to the expiration of the 90-day limitation imposed by K.S.A. 22-3402. Though the judge's reasoning was flawed, Clements was retried within 120 days after the mandate of this court had been received by the clerk of the district court as required by statute. Clements' statutory right to a speedy trial was not violated.

### Expert witness

Clements next claims that, over his objection, the trial court improperly allowed the State's expert witness, Tom Pletcher, to testify about the treatability and psychology of sexual offenders and then permitted the prosecutor to tie this testimony to Clements in his closing argument. Clements argues that evidence of the treatability and psychology of sexual offenders is not relevant to the issues in this case.

Evidence is relevant if it has any tendency to prove any material fact. K.S.A. 60-401. To be admissible, evidence must be confined to the issues but need not bear directly upon them. To render evidence of collateral facts competent, there must be some logical connection between them and the inference or result they are designed to establish. *State v. Reed*, 226 Kan. 519, 601 P.2d 1125 (1979) (citing *State v. Brown*, 217 Kan. 595, 538 P.2d 631 [1975]; *State v. Fagan*, 213 Kan. 587, 518 P.2d 552 [1973]).

Tom Pletcher, a psychologist, was employed as clinical director of the Counseling Center in El Dorado, Kansas. Pletcher's background included experience in counseling sexual abuse victims and specialized training in the area of child sexual abuse. Pletcher had counseled the victim, P.V., and testified for the State.

The portion of Pletcher's testimony to which defendant objected is as follows:

"Q: (By Mr. Ward) Mr. Pletcher, in general terms can you describe for the jury the psychology of an adult who sexually abuses children?

"A: First off I think I would address primarily my comments to the category of behavior which would apply to people who seek out sexual contact with children, and by this I mean not someone who may physically abuse a child in a—just happens to be in a sexual way, not a violent act necessarily in that sense. What you would look at is within the area of people who have a fairly strong orientation toward sexual contact with children. There are at least two categories as we tend to look at them. Within the overall categories, what we are seeing though is an adult who has, we will say a primary or at least a very persistent contact with children to satisfy their own sexual urges. To look at this we have someone who is either very distressed by their behavior or their thoughts or someone who is acting on them and this is something that goes on for some amount of time. It is not a specific, one particular size category, so to speak, in the sense that there are many different factors that apply. For example people who do that, there are some individuals who would be orientated toward children of the same sex that they are, other individuals who are orientated to the opposite sex, so you have that distinction. You have some people who are orientated toward either where it doesn't seem to make much difference. There are some individuals orientated towards children only in the family or orientated to children outside of the family. There are individuals that are—have an orientation toward children alone that are—their only sexual relationship is expressed with a child while there may be other people within a broad category who are able to maintain some sort of an adult sexual relationship and possibly may be married. In those kinds of cases we sometimes see where the other relationships are the ones that come almost out of social pressure, where they feel expected to be in these kinds of relationships. Probably the primary case is that the primary orientation is that toward the child and there is a compulsion, and by that I mean a driving force within them that this is the orientation that they pursue, that that is what they look at.

"Q: Are there different reasons why an adult will sexually abuse children?

"A: Yes. One of the things that has been found in a great number of cases of abusers is that they have been abused sexually themselves in the past. If I remember correctly, roughly a third of them have been abused. That is one thing. There may be other traumatic events that happen during the development of the child. These kinds    of things can occur. It is a part of the character. It is a part of them that developed over a period of time. It does not seem to be in general. We can't say that there is a specific event that always happens in all of these cases. It develops in different ways for each person.

"Q: You started to talk earlier about there being categories. Can you describe those categories for the jury?

"A: We look at them and make a distinction for these people in terms of—I would call them either fixated or regressed, and let me explain a little bit about what that means. A person who is fixated, you might think of them as they progress through adolescence, they stopped developing sexually in terms of relationships at that point and they never really progress beyond that. Their orientation is always toward the age mates, so to speak, that they had at that time and this may be children below the age of around 13. The other category, regressed, are people who may progress and have a fairly normal adult relation-

ship. There are typically problems within the family and this may be one of them, but under the periods of stress, this person regresses back to an orientation toward the child. Some of the things that are different between them are a person who you might consider being fixated. This tends to begin in adolescence for them, so it is of long standing, a long standing problem of behavior. We often see that there doesn't seem to be a particular stressor that causes them to act this way, something that happened around them to cause them to pull back and act out these desires. This is their primary way of relating to someone sexually. They—

"Q: Let me stop you. There are fixated persons that you are now describing as I understand your testimony, and this person evolves emotionally to a certain age level and stops, is that what you are saying?

"A: Yes, essentially that is what it is so that socially and sexually they stopped at that point and don't really develop beyond that. There may even be some external contact with age mates, with appropriate age mates in adulthood, but the primary focus is that on children.

"Q: Is there a specific term used to describe that kind of an individual?

"A: Yes, there is.

"Q: And tell the jury what that term is.

"A: The term 'pedophilia' applies to the category of individuals whose primary orientation is toward children.

"Q: Let's talk about the treatability of the regressed sexual offenders and the treatability of fixated sexual offenders. Are fixated sexual offenders generally speaking treatable for this problem?

. . . .

"A: Generally considered, no. I think the common assumption is that the person may enter treatment, but the chances of a cure so to speak of that being changed is minimal.

"Q: Now, how about the regressed sexual offender, the person who only commits the crime because of some stress situation in his life, is he or she treatable?

"A: The prognosis would be much better in that case. The chances of them being treated and not returning to such behavior would be much greater."

On cross-examination, Pletcher stated that the above comments did not specifically relate to the defendant and that he had never met or talked with Clements. However, in closing argument, over defendant's objection, the prosecutor was allowed to tie Pletcher's testimony to the defendant by stating:

"John Clements is a 27 year old man or 29 year old man. He has a 29 year old body and he has a thirteen year old mind that wants him to associate with kids of that age group, and that is exactly what he did. He tells you that he went to Carol Lussier's house for Carol's benefit. He didn't go to her house to help her out, he went to her house because he knew that boys would be there and he wanted to have contact with those young men. That is the way his mind is set that with kids he feels comfortable being around."

The State asserts that Pletcher's testimony was properly admitted to assist the jury in understanding the nature of child

sexual abuse. It equates this evidence with expert testimony explaining the battered woman syndrome in cases where a woman is charged with a crime against her batterer.

Clements contends that, even though Pletcher was a qualified expert in the field of sexual abuse of children, his testimony had no tendency to prove a material fact, *i.e.*, whether P.V. was sexually abused by Clements. He argues that the only logical inference that the jury could have drawn from Pletcher's testimony was that Clements fit the profile of the typical child sexual offender and was, therefore, guilty of the offense charged.

A similar issue was raised in *Hall v. State*, 15 Ark. App. 309, 692 S.W.2d 769 (1985). In *Hall*, the defendant appealed his conviction of two counts of sexual abuse involving a friend's children whom he was babysitting. At trial, an expert witness psychologist was allowed to testify regarding the dynamics of child sexual abuse, specifically that, in 75 to 80 percent of such cases, the perpetrator is known to the child ahead of time, is a relative or friend, and has implied or explicit authority over the children, perhaps as a teacher, grandparent, or babysitter. The expert also stated that generally the victims are instructed not to relate what happened to them, that half of the cases occur in the home of the child or perpetrator, and that the psychological profile of the perpetrator is usually heterosexual with the first offense occurring before the age of 40 and often related to alcohol or drug abuse. In *Hall*, as in the case at bar, the expert witness had not examined the defendant.

The Arkansas Court of Appeals found that the expert testimony tended to focus the attention of the jury upon whether the evidence against the defendant matched the evidence in the usual case involving sexual abuse of a young child. It determined that this type of evidence was not of proper benefit to the jury, since it was not introduced to rebut a misconception about the presumed behavior of an abused child, but to prove that the circumstances and details in that case match the circumstances and details usually found in child abuse cases. 15 Ark. App. at 317. Because of the admission of this evidence, over objections to testimonial generalities concerning the "dynamics" of child abuse, the conviction was reversed and the matter remanded for a new trial.

A related case is *State v. Maule*, 35 Wash. App. 287, 667 P.2d

96 (1983). In *Maule*, the defendant was convicted of two counts of first-degree statutory rape of his daughter and step-daughter. At trial, the prosecution was permitted to elicit testimony relating to general characteristics of child sexual abusers during qualification of its expert, a counselor at a community medical center who had treated the victims, but who had never treated the defendant. Specifically, the expert testified that 54-55 percent of the sexual assault center's caseload of about 750 involved victims under the age of 16. She stated further that the majority of cases involved a male parent-figure and, of those cases that involve a father-figure, biological parents are in the majority; and that the great majority of cases involve abuse over an extended period of time. On appeal, the defendant argued that the admission of this testimony constituted reversible error and the Washington Court of Appeals agreed.

The court rejected the State's argument that the evidence was relevant to assist the jury in establishing the expert witness' qualifications. The court reasoned that substantive evidence prejudicial to the opposing party does not lose its prejudicial character because it is offered during qualification of an expert. Its admissibility must be determined the same as any other evidence which is relevant but involves a danger of unfair prejudice. The court reversed defendant's conviction, determining that such evidence invites a jury to conclude that, because the defendant has been identified by an expert with experience in child abuse cases as a member of a group having a higher incidence of child sexual abuse, it is more likely the defendant committed the crime. 35 Wash. App. at 293.

A more recent case is *State v. Percy*, 146 Vt. 475, 507 A.2d 955 (1986). The defendant in *Percy* was convicted of one count of sexual assault. When questioned by police, the defendant claimed no recollection of the event. At trial, he presented an insanity defense, which he attributed to his combat experience in the Vietnam War. Upon cross-examination of defendant's own expert, the prosecution was allowed to elicit testimony that rapists typically claim consent or amnesia as a defense.

On appeal, the defendant claimed that such testimony improperly associated him with a general profile of rapists, and the Supreme Court of Vermont agreed. Initially, the court distinguished this evidence from permissible profile or syndrome

evidence, which it described as evidence elicited from an expert that a person, generally a victim of crime, is a member of a class of persons who share a common emotional, physical, or mental condition. The court then stated it failed to see how explanations or excuses offered by other rapists are relevant to what this particular defendant said in response to the offense charged. Allowing such evidence would permit the prosecution to suggest that a defendant's "story" is just like all the others and therefore lacks credibility. The court noted further that the testimony impermissibly stereotyped the defendant as one whose explanations were not to be believed because they were explanations typically offered by psychiatric patients accused of rape. In reversing the conviction, the court reasoned that the jury could well have concluded that this rapist was just like all the other rapists and might have rejected the defendant's insanity defense not because of the evidence before it but because defendant "fit the mold." 146 Vt. at 484. We find the reasoning of these cases persuasive on the issues before us.

The thrust of *Hall, Maule,* and *Percy* is that (1) evidence which only describes the characteristics of the typical offender has no relevance to whether the defendant committed the crime in question; and (2) the only inference which can be drawn from such evidence, namely that a defendant who matches the profile must be guilty, is an impermissible one.

Comparing the erroneously admitted evidence in this case to that admitted in *Hall, Percy,* and *Maule,* the error here presents an even more compelling case for reversal. Pletcher testified not only to isolated traits of the typical child sexual abuser, but provided the jury with a detailed description of "categories" of such offenders (fixated and regressed) as well as the prognosis for treatability of each category (little prognosis for cure if the individual was "fixated"). Pletcher described the fixated type as an adult who has "stopped developing sexually in terms of relationships" at a certain age, possibly around the age of 13, and thereafter retains a sexual orientation towards children of like age. In closing argument, the prosecutor explained to the jury that the defendant chose to frequent a shop selling baseball cards to young boys, so he could become acquainted with them and entice them to visit his home. The only inference which the jury could have drawn from this argument and Pletcher's testimony

was that defendant fit the profile of the typical fixated child molester and was, therefore, guilty.

Finally, we cannot agree with the State's contention that expert testimony of the treatability and psychology of sexual offenders can be compared with expert testimony of the battered woman syndrome. Expert testimony explaining the battered woman syndrome is relevant to the woman's claim of self-defense and assists the jury in determining the reasonableness of the woman's perception of her imminent danger. *State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (1986). Here, the expert's testimony detailing the characteristics of the individual who typically sexually abuses children did not assist the jury in determining if the child was sexually abused by Clements.

Though there was other evidence of defendant's guilt, the error here may not be held to be harmless. For us to hold the improper admission of the expert testimony and the prosecutor's remarks harmless, we must be able to say beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Johnson*, 231 Kan. 151, 159, 643 P.2d 146 (1982). Given the highly prejudicial nature of the expert testimony and the prosecutor's comments in closing argument, we cannot say beyond a reasonable doubt that the verdict was untainted by their admission.

Reversed and remanded for a new trial.