Ted Allen BUZZARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 44A03–9503–CR–64.

Court of Appeals of Indiana.

July 29, 1996.

Frank C. Capozza, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Ted Allen Buzzard appeals his convictions for five counts of child molesting: two Class B felonies and three Class C felonies. The facts relevant to appeal are summarized below.

In May 1989, Buzzard's child, ("Child No. 1"),[1] born in April 1983, lived with him in his trailer located in Shipshewana, LaGrange County, Indiana. At that time, Buzzard was married to R.B.

R.S. is the sister of R.B and Buzzard's sister-in-law. R.S. has three children: M.G., born in April 1983 ("Child No. 2"); T.G, born in September 1981 ("Child No. 3"); and M.G., born in June 1980 ("Child No. 4").

On more than one occasion between June 1990 and December 1991, the three girls stayed at Buzzard's home. Additionally, Buzzard's nephew, R.Y. ("Child No. 5"), who was approximately five years old at that time, stayed at Buzzard's home.

Between June 1990 and December 1991, while the children were staying with Buzzard, he entered their rooms and engaged in various sexual acts with them. Based on Buzzard's acts, an information was filed against him in January 1992. Specifically, Buzzard was charged with five counts of child molesting. Buzzard was tried by jury and convicted on all five counts. Thereafter he was sentenced to 52 years' imprisonment. Buzzard now appeals his convictions.

On appeal he raises several issues, three of which necessitate review. As restated the issues are:

(1) whether venue in LaGrange county was proper;

(2) whether the trial court erred in allowing expert testimony on pedophilia; and

(3) whether there is sufficient evidence of his guilt.

 Buzzard complains venue in La-Grange County was improper. A defendant has the right to be tried in the county in which his crime was committed. *Kuchel v. State,* 570 N.E.2d 910, 914 (Ind.1991). Venue must be proven by a preponderance of the evidence. *Id.* However, it may be established by circumstantial evidence. *Currin v. State,* 497 N.E.2d 1045, 1048 (Ind.1986). Some of the children revealed Buzzard molested them in his trailer. Child No. 1 testified Buzzard lived in a trailer located in

Northview Trailer Park in LaGrange County. Venue in LaGrange County was proper.

Next, Buzzard contends the trial court erred in allowing psychologist, Sue McCormick, to testify as an expert on pedophilia. At trial, the children gave detailed accounts of their sexual encounters with Buzzard. Specifically, Child No. 1 stated that while she was home from school, she smoked marijuana with Buzzard and then engaged in sexual intercourse with him. Later that same evening, she performed fellatio on Buzzard. Child No. 1 further revealed she engaged in sexual intercourse with him on several subsequent occasions.

Children Nos. 2–4, sisters, testified that during their visits with Buzzard, the three girls slept in the same room. At night after R.B. went to sleep, Buzzard came into their room and engaged in sexual acts with them. These acts occurred in each other's presence. More specifically, Child No. 2 explained that Buzzard placed her hand on his private parts. She also saw Buzzard touch the private parts of Child No. 3.

Child No. 3 stated that Buzzard touched her private parts and made her touch his penis in the presence of Child No. 2. She further explained that Buzzard threatened to kill them if she told anyone about his actions. Two of the girls said Buzzard engaged in sexual acts with them on more than one occasion.

Child No. 4 stated Buzzard forced her to touch his private parts and on one occasion placed his fingers inside her vagina. Child No. 5 stated Buzzard forced him to touch his "pee" or penis on at least two different occasions. Child No. 2's molestations were witnessed by both her sisters.

Although the children's testimonies were unequivocal, detailed and corroborated one another, after the children finished testifying the prosecutor questioned psychologist, Sue McCormick. McCormick gave expert testimony regarding the profiles exhibited by molested children and pedophiles. McCormick had neither interviewed the children nor

---

**1.** To avoid confusion, the children's names are omitted entirely because more than one child has the same initials.

Buzzard. Generally, she testified that female children who are molested exhibit behaviors including: promiscuity, sexual frigidity, excessive weight gain, bed wetting, thumb sucking, and fire setting. They also tend to develop unidentified fears and withdraw. According to her, male molestation victims become aggressive or passive. During questioning, she opined that it is almost impossible for young children to fabricate molestations because "they cannot make up stories, that they haven't experienced or learned."

Subsequently, the following colloquy took place between McCormick and the prosecutor:

Q: Ms. McCormick, are you familiar with the term pedophile . . . ?

A: Yes.

Q: What is that? What does that term refer to?

A: A pedophile is an adult person who is sexually excited by a pre-pubescent child, I mean a child before puberty. And, they derive sexual pleasure from that. Uh—that doesn't mean that they don't have a normal adult sex life as well.

Q: They don't restrict their sexual activity to just pre-pubescent children. They will engage in sexual activity with, with adults.

A: That's correct. Probably the majority are married people.

Q: How do you know when someone is a pedophile?

A: How do I know?

Q: When your [sic] faced with that situation, how do you determine in your mind whether they're a pedophile or not?

A: If, if they're admitting to being both, well then it's also being bothered by uh— children. Okay. Some pedophiles haven't acted on their desires, but they're, [sic] get sexual arousement [sic] from seeing uh—young children or looking at magazines of children, you find it. So, if they're bothered by them, if, if they're continuing [a] pattern of arousal from young children, even if they don't act

on it, they're considered pedophiles as far as diagnostic criteria.

Q: Would multiple victims, pre-pubescent victims be indicative of a pedophile?

A: Yes. The average pedophile will molest 247 children in their lifetime.

Q: . . . 247?

A: The average, yes. That means that some of them will molest 800 and something and some will molest 5 of 6.

Q: Can a pedophile ever be cured of whatever it is that makes them a pedophile?

A: Oh boy, I, I really feel like when we're talking about that, I studied under Marti Greengrass who, who did a lot with perpetrators and stuff. I don't know that we're at a point scientifically where we can address that. We have hopes people are involved in prisons and stuff having to make decisions on that. I think if a pedophile is consequented for their behavior and receives uh—good therapy, uh I think there is hope for them. It's kind of my opinion that if they've been consequented once, instead of jail once, and they come out and they do it again, at this level of our knowledge of, of perpetration, I don't think they're safe to society. Something like once you've been caught and punished, if you ever do it again uh—we need to lock them up and throw away the key.

Later, alluding to McCormick's testimony, the prosecutor stated in his closing remarks:

Now, . . . there can't be any doubt in your mind, . . . Buzzard is a pedophile. He meets the definition of . . . McCormick. . . . [She] also told you that pedophiles are, they can't be cured. Current state of medicine cannot cure pedophilia. That means that he will molest again.

\* \* \* \* \* \*

I never said . . . McCormick ever examined . . . Buzzard. She didn't. That's fine. She was talking about models . . . based on her experience and her training, what she knows. . . . In this case though, it's . . . too late to help [the children]. It's, what's happened to them has already happened.

But, there is someone that you can protect. And, that's ... Buzzard's next victim.

\* \* \* \* \* \*

The choice is your's [sic]. You can either find ... Buzzard guilty on the 5 counts that we've charged him with, here. You can let him walk out that door to molest again and again and again. . . .

■ Buzzard contends error occurred from the above. That is, he argues *inter alia* McCormick's testimony in conjunction with the prosecutor's closing remarks impermissibly inflamed the passions of the jury and prejudiced his case to the extent necessitating a new trial. The State argues Buzzard has waived the issue because he failed to make a timely objection at trial. The record reveals defense counsel made several objections in response to the testimony and argument and thereafter requested a mistrial on this basis. Moreover, on appeal, Buzzard maintains any failure to object in a timely manner is attributable to the ineffectiveness of his trial counsel. Thus, the issue is not waived.

■ In Indiana, to be admissible, expert testimony must satisfy the requirements of Ind. Evidence Rules 702 and 703. Evid. R. 702 provides, in pertinent part:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Evid. R. 703 further provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.

These rules are restricted by Ind. Evidence Rule 403 which provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Evid. R. 403. Because the question of the admissibility of expert testimony is a matter charged to the discretion of the trial court, we will reverse only for an abuse of that discretion. *Byrd. v. State*, 593 N.E.2d 1183, 1185 (Ind.1992).

■ Whether based on a personality profile or not, expert opinion is generally not an appropriate way to prove defendant's character for a particular trait. *Id.* at 1187.[2] Although Indiana courts have discussed the use of profile testimony as rebuttal in other contexts, *see e.g. id.* (expert testimony defendant did not possess personality profile of a murderer held inadmissible); *Steward v. State*, 652 N.E.2d 490, 499 (Ind.1995) (child abuse syndrome, profile, or pattern evidence held inadmissible to prove occurrence of child abuse); *Cf. Miller v. State*, 623 N.E.2d 403, 413 (Ind.1993) (in rape trial where defendant introduces profile evidence he does not exhibit sadistic tendencies, state may rebut with testimony of other alleged victims of sexual abuse), the specific circumstances of the present case, i.e., pedophilia profile testimony dealing with scientific models rather than examination of the parties involved, has yet to be addressed by Indiana appellate courts.

However, other jurisdictions have ruled on this and similar questions. *See People v. Berrios*, 150 Misc.2d 229, 568 N.Y.S.2d 512, 514 (N.Y.Fam.Ct.1991) (for discussion and list of states and federal circuits which exclude profile type testimony in general). The facts of *State v. Clements*, 244 Kan. 411, 770 P.2d 447, 454 (1989), in particular, are similar to those presented here. In *Clements*, the prosecutor called a psychologist to testify as to general characteristics of a child molester. The expert defined the term "pedophilia." He also opined that "fixated pedophiles" are generally incurable. Thereafter during closing argument, the prosecutor remarked that defendant frequented a shop selling baseball cards to young boys so he could entice them to his home. *Id.*

**2.** The *Byrd* court did note, however, that if a defendant opens the door to the subject of his own character, the State may introduce evidence of specific misconduct as rebuttal. *Byrd* at 1188.

The *Clements* court found the admission of the profile testimony in conjunction with the prosecutor's argument to be in error. After noting that profile testimony has been considered and almost universally rejected in other jurisdictions, the *Clements* court reasoned profile testimony such as above which only describes broadly the characteristics of a typical offender is not relevant as to whether the crime actually occurred and impermissibly usurps the jury's role in analyzing the facts. *Id.* More specifically, the court stated the "only inference which the jury could have drawn from [the prosecutor's] argument and [the expert testimony] was that defendant fit the profile of a fixated child molester and was, therefore, guilty." *Id.* 770 P.2d at 454. In line with this reasoning, our own supreme court has expressed concern for juries placing excessive weight on character assessments made by experts. *Byrd,* 593 N.E.2d at 1188.

■ Here, like in *Clements,* McCormick defined "pedophilia" and concluded that it is generally incurable. She went further, though, than the psychologist in *Clements.* That is, she defined pedophiles broadly as including not only those who act on their sexual desires for children but also those who do not act but are nonetheless sexually aroused by children. Immediately thereafter she speculated that a single pedophile fitting her definition could molest between 5 or 800 children in his lifetime.

Unlike the psychologist in *Clements,* McCormick neither examined the children nor Buzzard. The problem was later exacerbated by the prosecutor who argued that it was of no import that McCormick lacked knowledge of the specific facts of the case, that Buzzard fit squarely within McCormick's definition of a pedophile, and drawing upon the testimony regarding recidivism of molesters, stated the only way to prevent harm to numerous future victims was to return a verdict on the five charges against Buzzard.

■ McCormick's testimony had little relevance to whether Buzzard committed the acts for which he was charged, *see* Evid. R. 702 (expert testimony appropriate where it "will assist the trier of fact to understand the evidence or determine a fact in issue") and should have been excluded under Evid. R. 403. Moreover, as the *Clements* court determined, it is unlikely that her testimony in conjunction with the prosecutor's statements had no impact whatsoever on the jury's verdict. Other jurisdictions are in agreement with this reasoning. *See Berrios,* 568 N.Y.S.2d at 514; *Haakanson v. State,* 760 P.2d 1030, 1036 (Alaska.Ct.App., 1988) (upon expressing concern jury may place undue emphasis on expert's sex offender profile testimony court held evidence sufficiently prejudicial to warrant reversal); *Sloan v. State,* 70 Md.App. 630, 522 A.2d 1364, 1369 (1987) (because expert testimony as to "classic indicators" of child abuser most likely contributed to guilty verdict, court held error in its admission to not be harmless); *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173 (Wash.1984) (statement that 85% to 90% of molestations were conducted by persons known to child not harmless error because it allowed jury to infer that because defendant was related to child he was statistically more likely to have molested victim); *People v. Bradley,* 172 Ill. App.3d 545, 122 Ill.Dec. 523, 526 N.E.2d 916, 921 (1988) (profile testimony on child abuser allowed jury to speculate as to whether defendant fit general characteristics, absolved state from proving its case, and was only intended to show defendant's propensity to commit crime).

Inasmuch as there is sufficient evidence of Buzzard's guilt without McCormick's testimony, this cause is reversed and remanded for a new trial. *See Brady v. State,* 575 N.E.2d 981, 989 (Ind.1991) (no double jeopardy violation in granting new trial where evidence sufficient to support conviction); *Clements,* 770 P.2d at 455.

Reversed and remanded for a new trial.[3]

GARRARD and FRIEDLANDER, JJ., concur.

---

3. In his brief, Buzzard also raised the issue of the propriety of the reasonable doubt instruction giv-

en in his criminal trial which used the language "moral certainty" and "willing to rely and act." While it is unnecessary to address this issue presently, it should be noted that the Indiana Supreme Court recently authorized and recommended, "preferably with no supplementation or embellishment," that the following instruction on reasonable doubt be given immediately in criminal cases:

The government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find [him/her] guilty. If on the other hand, you think there is a real possibility that [he/she] is not guilty, you should give [him/her] the benefit of the doubt and find [him/her] not guilty.

*See Winegeart v. State,* 665 N.E.2d 893 (Ind. 1996).